## SAN ANTONIO v. JOHN M. ODIN.

The Congress of the Republic authorized the Council of the city of San Antonio to sell such public lots, &c., as lay within their jurisdiction, and such houses or other buildings as had formerly been the property of the corporation of said city ; the proceeds of such sale to be appropriated to the erection or repairs of a Court-House, Jail, and other such public edifices, as may be deemed most fit, and to the erection and endowment of a public school ; afterwards, before a sale, Congress acknowledged and declared certain Churches to be the property of the present chief pastor of the Roman Catholic Church in the Republic of Texas, and his successors in office, in trust forever, for the use and benefit of the congregations residing near the same, for religious purposes and purposes of education, and none other ; afterwards, at same session, Congress passed an Act declaring that the Church of the Alamo, in the city of San Antonio, was thereby yielded and granted for the use of the Catholic Church, upon the same terms and conditions as the Churches of Concepcion, San Jose, San Juan and others, (the Churches named were named in the previous Act ;) Held, That both the latter Acts should be construed together ; that the grant of the Alamo was not void for uncertainty, either as to trustee or beneficiaries ; that said grant was not unconstitutional for perpetuity ; and that it repealed the power previously given to the Council of San Antonio, and vested the title of the Republic, if any, in the grantee, for the purposes named.

Appeal from Bexar.

*I. A. & G. W. Paschal* and *Stribling*, for appellant.

*Webb & Oldham* and *L. A. Thompson*, for appellee.

LIPSCOMB, J.   This suit was brought by the appellant, to recover the property known as the Alamo, in the city of San Antonio.   From the statement of the facts it appears, that the city of San Antonio was founded about the year 1730.   The corner-stone of the Alamo was laid on the 13th of May, 1744. This mission, as well as the others in the valley of the San Antonio river, was erected by order of the King of Spain, for

the purpose of civilizing the Indians. The missions were under the charge of the Franciscans, or the Friars of that order, which was an order independent of the regular Church. The mission of the Alamo was formerly known as the mission of Valerio, and was secularized by order of the Government, in 1794. After the secularization, the Indians remaining were sent to the missions of Concepcion and San Jose. None of the property pertaining to this mission was ever distributed by order of the Government, except a few *suertes* assigned to the Indians. The Friars continued to occupy the buildings till 1801, when the Spanish soldiers took possession of the buildings and continued to occupy them until 1835. The consent and permission of the *Curate* of the parish was obtained at the time the troops took possession of the same. In the year 1794, after the secularization of the missions, the Baptismal Registry of Births and Deaths of this mission were delivered over into the hands of the Curate of Bexar, and the people of this mission became subject to his jurisdiction. From 1808 till 1835 there was a separate Registry kept by the Company stationed at the Alamo, for the births, deaths and baptisms of said Company. From the year 1801 till 1835 mass was frequently celebrated at intervals of from 8 to 10 days; and other religious rites, such as baptism and burials and marriages. The part of the building originally intended for the Church attached to the building was never completed; it never had a roof. One of the rooms in another part of the building was fitted up as a chapel, and was used as such. The mission of the Alamo is situated within the limits of the city of San Antonio. In 1827, the Secretary of the Treasury of Mexico ordered one Erasmo Seguin to make an inventory of the property belonging to the National Government of Mexico in Bexar. He then included these buildings in the inventory, and forwarded the same to the Treasurer. In the year 1823, an order was issued by the Government of Mexico for the sale of the houses, lots, mills and lands pertaining to the extinguished missions of

San Antonio v. Odin.

San Jose, Conception, San Juan and Espado, and the property was so sold, but the conventual houses were reserved from sale, except the Convent attached to the mission of San Jose, which was sold. There was no order for the sale of the mission of the Alamo. All these missions were erected in the same manner and were subject to the same authority. The city of San Antonio never pretended to exercise any authority or control over the buildings or lots of the Alamo. The Church, prior to the revolution, exercised such claim, as before stated. After the year 1835, these buildings were vacant and in a very dilapidated condition, and so remained until 1841, when there were two or three families living in or occupying different rooms. They took possession without the consent of any one. After being there two months, they were told by the Bishop at San Antonio, that the property belonged to the Church and were requested to occupy and take care of the same for the Church. These families remained there ten months afterwards and then left. About the beginning of the year 1847, the Quartermaster of the United States army took possession of the Alamo buildings and claimed them as belonging to the United States Government, but in April of the same year acknowledged to hold them as tenant of the Bishop of Texas. The fact that the Government held as tenant was not known to the public until about eighteen months before the commencement of this suit. The Bishop had an agent in San Antonio in 1841, but his agency was not made publicly known, but he did exercise a general control over it. The corporation of San Antonio never asserted title to the Alamo till the institution of this suit. The plaintiff claims under the statute incorporating the city of San Antonio, of 1837, and also the statute of 1838 amendatory thereof, and also the statute of 1842 incorporating the city of San Antonio, and also by former ownership. And the defendant claims under the evidence of ancient possession of the Church as given in the statement of facts, and under the statutes of the Republic of 1841. A jury

was waived, and the Judge gave his judgment in favor of the
defendant, from which judgment the plaintiff appealed.

There is no shadow of title in the corporation, to the prop-
erty in controversy, prior to the legislation of the Republic.
It had never been claimed, and it was neither a common in the
city, nor a plaza, nor a common way, nor an exido thereof.   It
was neither used nor claimed as the property of the corpora-
tion ; and it might as well have set up title to any other indivi-
dual property within the city.   If the claim of the city rested
upon prior, ancient ownership, the defendant would not be
called upon to show any title whatever.   If the corporation
has any title, it is derived from the legislation of the Repub-
lic.   We will, therefore, proceed to inquire what right, if any,
the corporation can claim from the Acts of the Congress of
the Republic.

Whatever right the plaintiff has to the property in question,
is found in the 8th Section of the Act of Congress of the Re-
public.   It is as follows : " That the said Council, in conjunc-
" tion with the Justices of the County Court, are hereby em-
" powered and authorized to sell and alienate such public lots
" or parcels of land as may lie within their jurisdiction, and
" to which there is no legal claimant, or title, and also to dis-
" pose of such houses, or other buildings, as may have formerly
" been the property of the corporation of said city, and the
" Council may sue for and recover all debts, forfeitures, &c.,
" accruing or due to the said corporation ; the proceeds of such
" sale to be appropriated to the erection or repairs of a Court
" House, Jail and other such public edifices as may be deemed
" most fit, and to the erection and endowment of a public
" school."   This Act, or legislative grant as it has been called,
authorized the corporation, in connection with the Justices of
the County Court, to sell none but such land or lots within
the city of San Antonio to which there was no claim or title,
and to sell such houses and other buildings as were formerly
the property of the corporation.   This Act did not vest the

fee of any property in the corporation and Justices of the
County Court, but it conferred only a power to sell, coupled
with a trust that the proceeds of the sale should be appropri-
ated to particular objects designated ; the fee remained in the
Government until the trust was executed, and then passed to
the purchaser, without ever having been in the corporation and
Justices of the County Court. The Act of 1838 only changed
the Act commented on, so far as to authorize the corporate au-
thority to do, of itself, what the former Act authorized to be
done in connection with the Justices of the County Court.
The power to sell, given by the two Acts cited, has never been
executed, and on the 18th day of January, 1841, the Congress
of the Republic of Texas passed the following Act : "That
" the Church of the Alamo, in the city of San Antonio, be and
" the same is hereby yielded and granted for the use of the
" Catholic Church, upon the same terms and conditions as the
" Churches of Concepcion, San Jose, San Juan and others."
The Act to which this refers was passed on the 18th January,
1841, only five days before, and is as follows, i. e. : " That the
" Churches at San Antonio, Goliad and Victoria, the Church
"lot at Nacogdoches, the Churches at the mission of Concep-
" cion, Jan Jose, San Juan, Espada, and the mission of Refugio,
" with out-buildings and lots, if any, belonging to them, be and
" they are hereby acknowledged and declared the property of
" the present chief pastor of the Roman Catholic Church in
" the Republic of Texas, and his successors in office, in trust
" forever for the use and benefit of the congregations residing
" near the same, or who may hereafter reside near the same, for
" religious purposes and purposes of education and none other ;
" provided that nothing herein contained shall be so construed
" as to give title to any lands except the lots upon which the
" Churches are situated, which shall not exceed fifteen acres."
It is believed that this Act would have been sufficient to have
included the Alamo, if the subsequent Act of the 18th of the
same month had not passed, because it includes the Churches

at San Antonio, but for greater certainty the last Act was passed, only five days after, expressly giving the Church of the Alamo, and the two Acts may be taken together in support of the defendant's right to the property mentioned therein. If the hypothesis is assumed, that anterior to all legislation under the Republic of Texas, the property in question was the property of the Republic, and that the Acts in favor of the corporation of San Antonio, conferred upon the corporation all that is assumed to be done by those Acts, yet the Acts subsequently passed, giving the property to the Catholic Church, was constitutional, and constituted a valid grant to the Church, because, as we have shown, the first named Acts gave not the fee, but only a power to sell for specific purposes, and until this power was executed, the authority remained with the legislature to revoke the power and to change the uses for which the first power was given. The principles here laid down were considered and decided by this Court in the case of Bass v. Fontleroy, (11 Texas, 698,) and as we are well satisfied with our decision in that case, need not be further discussed.

It would have afforded the Court pleasure to have followed and answered the extended argument of the plaintiff's counsel, furnished in his printed brief, on other questions raised, and not noticed for the want of time and the pressure of other matters. We are well satisfied, that had we done so, the result would not and could not have been changed.

We will give a passing notice to the objection to the legislative grant, that it is too vague and uncertain as to the persons to whom the trust is confided, and the objects it has particularly in view.

The case of the Baptist Association v. Hart, 4 Cond. Rep., 371, was to an incorporated association, as Trustees, who were legally incapable of taking the bequest for want of a legal existence. The case of Green et al. v. Allen et al., 5 Humph. Tenn. R., 170, was regarded by the Supreme Court of Tennessee as obnoxious to the same objection, and also that it was

uncertain as to who were the objects or beneficiaries of the bequest. The latter cannot be regarded as settled on satisfactory basis, as the very able dissenting opinion in the case leaves some doubt if, in that case, the bequest should not have been sustained. This case is not believed to come within the objections taken in either of those cases. In this there is no uncertainty as to who is to be the Trustee to take, nor of his capacity to take, nor who is to continue to execute the trust ; nor is there any ambiguity as to the objects of the trust. It is a stronger case than Beaty v. Kurtz, 2 Peters, 566, which was sustained. If, however, we were not satisfied that this case, in principle, could be distinguished from the cases of the Baptist Association v. Hart, and Green et al. v. Allen et al., it is believed that it could be sustained on the ground of its being a legislative grant, and not a bequest, as were the two cases just noticed, and that it could be successfully claimed for this legislative grant, that it conferred on the person designated as trustee, the capacity to hold, and made him a corporation sole *quoad* the object of the Act. (See Society for Propagating, &c., v. Pawlet, 4 Peters, 480, and the English authorities referred to in appellee's brief, and Inglis v. Trustees of Sailors' Snug Harbor, 3 Peters, 99, 119.) But we do not design to put our decision upon this ground, as the other is entirely satisfactory. The judgment is affirmed.

Judgment affirmed.