E. BLANC ET ALS. V. FRANCIS H. ALSBURY ET AL.

(Case No. 2057.)

1. CATHOLIC CHURCH. — A deed of conveyance was made to a Catholic bishop, conveying land for the purpose of securing a church building; the conveyance was to him for that use "and his successors and his and their assigns," for the purpose of "erecting thereon a Roman Catholic church and other buildings pertaining thereto, or to be exchanged therefor or used in the purchase of other property in the town," etc.  *Held:*

(1) The right was vested in the bishop to exchange the land for other property in the town, without regard to the consent of other Catholics residing in the town.

(2) Having built a church on part of the land, the right existed in the bishop to sell the part not occupied to discharge a debt incurred in the erection of the church; the part not sold being sufficient for church purposes.

APPEAL from Waller.  Tried below before the Hon. Wm. H. Burkhart.

Appellants E. Blanc *et als.*, members of the Catholic church at Hempstead, Waller county, brought this suit against C. M. Dubois, Catholic bishop at Galveston, and Francis H. Alsbury and husband, to set aside a conveyance made by Bishop Dubois, as bishop, to F. H. Alsbury to six lots of ground out of block 163, in the city of Hempstead, on the ground that the block belonged to the Catholic church, and that the bishop held it only as trustee, and exceeded his power as such in conveying to F. H. Alsbury.  Before the trial Bishop Dubois was superseded in the diocese by Father Gallagher, who was made defendant.  The cause was tried by the court without a jury and judgment was rendered for the defendants.  The errors assigned were:

" 1. The court erred in rendering judgment for defendants.

" 2. In not holding the deed from C. M. Dubois to F. H. Alsbury void.

" 3. In holding that C. M. Dubois had the power to make such a conveyance.

" 4. In holding that the transaction between Alsbury and Dubois was binding on the plaintiffs.

" 5. In holding that Alsbury's debt for repairs was a charge against the land.

" 6. In not holding that Dubois, the Catholic bishop, or the members of the Catholic church were powerless to create a charge on the land, or to convey it for a debt due by the members of the church.

" 7. In not holding that Alsbury's remedy was against the individual members of the church and not against the property.

" 8. In not granting the relief sought, and for entertaining the special defense of Alsbury."

*A. J. Harvey* and *H. M. Brown*, for appellants, cited: Morrill *v.* Bartlett, 58 Tex., 651; Wethered *v.* Boon, 17 Tex., 146; Peters *v.* Clements, 46 Tex., 123; Rogers *v.* Bracken, 15 Tex., 568; Pitts *v.* Booth, 15 Tex., 454; Hatchett *v.* Conner, 30 Tex., 114; Miller *v.* Brownson, 50 Tex., 597; Jackson *v.* Loomis, 15 Am. Decisions, note on page 352; citing Stark *v.* Starr, 1 Saw., 15; Gill *v.* Patten, 1 Cr. C. C., 465; Woodhall *v.* Rosenthal, 61 N. Y., 397; Whitledge *v.* Wait, Sneed (Ky.), 397; Bell *v.* Bornell, 2 J. J. Marsh., 516; S. C., 7 Ind., 379.

*T. L. Reese*, for appellees, cited: 2 Redfield on Wills, 562, 563; Dorn *v.* Dunham, 24 Tex., 375; Thouvenin *v.* Lea, 26 Tex., 612; Patrick *v.* Roach, 21 Tex., 252; Moore *v.* Brown, 15 Tex., 130; Saunders *v.* Wilson, 19 Tex., 201; Herndon *v.* Rice, 21 Tex., 458.

Watts, J. Com. App.— Evidently the real intention in procuring the conveyance to be made to Bishop Dubois was to secure a church at Hempstead, in which the Roman Catholics there residing might worship at will.

That purpose is fully shown by the following recitals contained in the conveyance, viz.: "To have and to hold unto him, the said Claudius M. Dubois, for the use aforesaid, and his successors and his or their assigns, forever. It is hereby declared that the premises herein described are granted the said Claudius M. Dubois for the purpose of erecting thereon a Roman Catholic church, and other buildings pertaining thereto, or to be exchanged for or used in the purchase of other property in the town of Hempstead for said purpose."

It is a matter of historical and common knowledge, that the form of government in the Roman Catholic church is an episcopacy, and in which the dioceasan bishops possess enlarged powers, respecting

the temporal as well as the spiritual affairs of the church, in their respective diocese. Bouvier's Law Dictionary, word "Episcopus;" San Antonio v. Odin, 15 Tex., 544.

Under the terms of the conveyance the bishop would have the right to exchange the lots described for other property situated in the town of Hempstead, upon which to have the church erected. This power was vested in the bishop by the conveyance, and the exercise of which was not dependent upon the concurrence of the Roman Catholics residing at Hempstead. But by virtue of his office and the terms of his deed, he alone was to judge of the necessity or expediency of making such exchange. Suppose, then, that the bishop had exchanged these for other lots situated in the town, and in that exchange had received, as the difference in value, money sufficient to erect a church upon that secured by the exchange, we apprehend that no one would insist that he could not have rightfully applied the money to that purpose. The exchange being expressly authorized, the other would follow as incidental to that, and its exercise would be appropriate in the proper execution of the trust. And if in the judgment of the bishop it has become necessary to dispose of a portion of the property conveyed, so as to enable him to raise means with which to erect a church on what remained, it is believed that he would be authorized to do so, provided a sufficiency of the property was retained to subserve the original and primary object of the grant.

Obviously the real purpose was to secure a church building in which the Roman Catholics might worship according to their own methods. And in securing that object it was intended that much should be left to the discretion of the bishop, who, as head of the church in the diocese, had the necessary power, as supplemented by the conveyance, to manage the property in such manner as his judgment might approve as the best in securing the object intended, and in promoting the welfare of the church at Hempstead.

It appears that, at the instance of the bishop, Alsbury had erected the church upon the property and inclosed the same, including four of the lots, and that for this work the church was indebted to him in the sum of $294.29, and was not able to pay it. Therefore, to settle that debt, the bishop conveyed the six lots in controversy to Mrs. Alsbury.

None of these are included in the church inclosure, nor is it made to appear that these lots, or any part of them, are in any way necessary to the fullest enjoyment of the church privileges intended to have been secured by the grant.

There is no pretense but that Alsbury's claim was just, and might have been put into judgment. And there is no reason shown why the whole of the church property might not have been subjected to its payment.

Then to avoid such loss, and to secure the church building and enough of the land upon which it was situated to fully answer the conveniences and necessities of the worshipers, it would seem to follow that the bishop had the power to make the conveyance. It does not appear that any one was injured thereby; on the contrary it seems that the church community was benefited by that arrangement.

At the time the six lots were conveyed to Mrs. Alsbury they were of the value of about $30 each, but by reason of improvements placed thereon by Alsbury they were greatly enhanced in value at the time this suit was brought.

Having carefully examined the record, we conclude that there is no error in the judgment, and that it ought to be affirmed.

AFFIRMED.

[Opinion adopted March 13, 1885.]