**CRENSHAW et al. v. MUSE et al.**

No. 8664.

Court of Civil Appeals of Texas. Austin.

June 1, 1938.

632

Wright Stubbs and Lowry Whittaker, both of Austin, for appellants.

Fred L. Blundell and Tom Gambrell, both of Lockhart, for appellee.

McCLENDON, Chief Justice.

This suit grew out of a controversy between two factions in the old St. John Church (St. John Missionary Baptist Church) located in the St. John community, near Dale in Caldwell County; which controversy arose out of an effort to unite the St. John Church with the Zion (St. John Zion Baptist Church), another church in that community. The plaintiffs below are the pastor, four of the seven deacons, and one of the three trustees of the St. John Church; and the defendants are the three other deacons, the two other trustees, and some other members of St. John. The relief sought was, (1) to cancel a deed, executed by the majority of the trustees, conveying the church property to the St. John Zion Missionary Baptist Church, a new organization created at a joint meeting of the two churches held April 8, 1936; and (2) ancillary injunctive relief, protecting plaintiffs in the use of the church property. The judgment, which was upon a directed verdict, was in favor of plaintiffs cancelling the deed and granting the ancillary relief. Defendants have appealed.

The sole issue the appeal presents is whether the evidence would support a jury finding that the two churches (St. John and Zion) had legally united into one organization. We summarize the material evidence:

Prior to the inception of the controversy, there were three churches in the St. John community, all of the Baptist faith. The third church was known as the Land Mark. None of these churches was incorporated and each owned its own church building. In December, 1935, there was begun an effort to unite the three churches. This failed by reason of Land Mark's refusal to unite. At the regular monthly business meeting of the St. John Church held March 7, 1936 (Saturday before the second Sunday in the month), the question of uniting with Zion was considered. The controversy revolves in the main over what transpired at this meeting, as to which there is a sharp conflict in the evidence. The minutes of this meeting were drawn in pencil by the secretary, and contain many erasures. They were signed by the secretary in person. The pastor's name was signed by the secretary; whether by his authority was controverted. It seems conceded that these minutes, which have never been approved, do not fully or accurately record the action taken by the meeting. In so far as pertinent they read:

"Motion made and seconded we hear the report of Unification. The report was received from the comm. and discussed. That report that was carried to the comm. of 15 was not accepted by Land Mark church. It was motion that we do away with the plan and 31 in favor and 34 not in favor. It was motion and 2nd the plan of unification of three churches be tabled and take up the plan to the two churches. St. John voted solid that she was willing to unite with Zion. It was motion and 2nd that St. John and Zion churches meet. The motion was arrested as to whether the pastors be present. The amendment was that the pastors be present in the meeting of the 2 churches. By common, consent we Meet Wed night and the place was to be arranged later."

All agree that there was to be a meeting with Zion on Wednesday (April 8th) preceding the regular April meeting of St. John, the place to be agreed upon by the deacons of the two churches and reported back. This was done and the agreement was to hold the meeting at the Zion Church. The fact issue concerns the authority of this meeting to bind St. John. A number of witnesses, present at the March 7th meeting, testified that the motion which finally carried was that the two churches were to meet, provided both pastors were present, and agree, if possible, upon a plan of union; such plan to be referred back to the two congregations for ratification or rejection. Other witnesses testified that the motion which carried was to the effect that the two churches meet for the purpose of taking final action upon uniting,

and that the two pastors might attend the meeting, if they chose. The joint meeting was held at Zion Church, April 8th, at which, in addition to the Zion members, a number of St. John members, variously estimated at from 20 to 39, attended. The St. John pastor did not attend. There is no material controversy as to what took place at this meeting. A standing vote was taken, in which all present, except five St. John members, voted in the affirmative upon a resolution that the two churches unite on "50-50 basis." No separate vote was taken of the two congregations.

■ Clearly there was a fact issue upon the question whether the resolution passed at the March 7th meeting in terms authorized final action upon the union question at the April 8th joint meeting.

■ It is conceded by both sides that as concerns its internal affairs, church government, etc., each Baptist Church constitutes an independent organization, and the vote of a majority of the members at a regular business meeting of the church or at a meeting regularly called for that specific purpose, is binding in any matter touching the church government or affairs. This was shown by evidence at the trial and is in accord with adjudicated cases upon the subject. See First Baptist Church v. Fort, 93 Tex. 215, 54 S.W. 892, 49 L.R.A. 617; First Baptist Church v. Ward, Tex.Civ. App., 290 S.W. 828, error dismissed; Hopson v. Swansy, Tex.Civ.App., 1 S.W.2d 419.

Appellants contend that the record presents two specific fact questions as to which they were entitled to a jury finding: (1) whether the unification meeting of April 8th was authorized to be held without the presence of the two pastors; (2) whether the action of that meeting was to be binding on St. John Church without being referred back for ratification.

Appellees present but one formal counter proposition, which is a mere abstract proposition of law to the effect that "being entitled to an instructed verdict as a matter of law" it would have been useless to submit any fact issue to the jury. As we gather from their brief they rely upon four points in support of the directed verdict, which may be stated substantially as follows:

1. Quoting from appellees' brief: "Practically all of appellants' witnesses testified that nothing was said at the March 7 meeting about the parsons being present at the April 8 meeting but said March 7 minutes, unsatisfactory as they were, show that the pastors of the two churches were to be present at the meeting."

2. The evidence showed that nothing was done at the April 8th meeting to authorize conveyance of the property to the unified church.

3. The unification vote of April 8th was invalid because that meeting "was a consolidated, mixed, conglomerate meeting, not participated in merely by St. John's members but that others who were possibly members of Zion Church, not members of any church, profanes or impostors also had a voice and vote therein."

4. In order to transfer title to the property all three of the trustees were required to join.

■ As to the first point: The minutes of the March 7th meeting are not clear as to what action was taken as regards either the authority of final action on unification at the April 8th meeting, or the presence of the pastors at that meeting as a prerequisite to validity of such action. These minutes were never adopted, and were merely an ex parte statement of the secretary. They therefore possessed only evidentiary value. Absent anything in the church law, rules, or regulations to the contrary, it was competent to show by parol what action was in fact taken at the meeting. This is the rule as to private corporations (See 14 C.J., pp. 1435–6, § 1435), and we see no valid reason why the same rule should not apply to proceedings of unincorporated religious societies. As already stated, the evidence, while sharply conflicting, was sufficient to support a finding that the action taken at the March 7th meeting authorized final unification action at the March 8th meeting, attendance of the pastors at such meeting being optional with them.

■ As to the second point, we hold it immaterial whether any action was had at the April 8th meeting regarding transfer of the church property to the united organization. The beneficial title to the property was in the St. John membership. The trustees were merely holders of the legal title for their benefit. If there was a valid union of the two churches, this beneficial title passed to the united organization, and a transfer of the legal title could be required by such organization at any time.

634

Trustees of Trinity M. E. Church v. Harris, 73 Conn. 216, 47 A. 116, 50 L.R.A. 636; 23 R.C.L., p. 427, § 7; 54 C.J., p. 93,' § 197, and p. 96, § 204.

We hold the third point not well taken. It is true that the unification could not be consummated except by a majority vote of the members of each church. The evidence shows without contradiction that from 20 to 39 members of St. John were present and voted at the April 8th meeting, and that all but 5 of these voted in favor of unification. The failure to take a separate vote of each congregation was therefore a mere irregularity, and did not affect the validity of the action.

The fourth point is covered by our holding upon the second point, above. It should be added that the only evidence upon the authority of the trustees was to the effect that it only required a majority to be binding as regards their official acts, and the joinder of all three was not required.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.