### HUGHES et al. v. KEELING et al.
#### No. 4403.

Court of Civil Appeals of Texas. Beaumont.
Nov. 29, 1946.

O'Fiel & O'Fiel, of Beaumont, for appellants.

Harold R. Clayton, of Port Arthur, for appellees.

WALKER, Justice.

This proceeding is an appeal from an order denying appellants a temporary injunction. The order was made on June 18, 1946, pursuant to a hearing before the trial court on that date.

Appellants, numbering 13 persons, are plaintiffs and appellees Keeling and Johnson are defendants in the trial court. The only pleadings before us are appellants' Second Amended Petition and appellees' plea in abatement, motion to dismiss, and First Amended Original Answer, which are summarized below.

As we construe appellants' petition, it is alleged therein, directly or by inference, that appellants are members of an unincorporated negro religious association which is a Baptist Church known as the Sixth Street Baptist Church of Port Arthur, Texas; that this Church acts by and under a "majority vote of its members taken in accordance with certain rules and by-laws which they have accepted for their government", to wit, a publication styled the "Hiscox New Directory for Baptist Churches"; that the "governing board" of the Church (by which, we assume, appellants mean the executive officers of the church) is a Board of Deacons, seven in number, who were last elected prior to or during 1941, and that the appellant Lewis Hughes is one of said Deacons; that during 1936, appellee Keeling was made pastor of the Church and held that office until a meeting of the Church "on and since" April 19, 1946, and that at this meeting he was discharged as pastor—but has continued to act in that capacity; that appellants desire to have new officers elected and a pastor employed, and that on three separate and distinct occasions, at business meetings of the Church, either appellee Keeling, or both appellees Keeling and Johnson, prevented such action being taken, it being said, in effect, that Keeling alone at the first meeting dominated the members then present, that Keeling and Johnson together cowed and mentally overpowered the persons attending the second meeting, and that the said Keeling and Johnson finally had recourse to vulgar force on the third occasion and locked the church, "retaining the keys thereof and refusing the plaintiffs and other members the privilege of entering the same" for the purpose of holding the proposed meeting; that the said Keeling, or perhaps both Keeling and Johnson, have collected Church contributions over the years and will divert the same unless restrained; that the church will decay unless new officers are elected and that appellees threaten to prevent such action and the employment of a new pastor as well. Appellants, in effect, pray that the court cause an election of officers to be held among this association and that appellees be restrained from interfering therewith. And in this connection, they say that appellees have the church roll and other records, and pray that appellees be required to deposit these documents with the district clerk, to be made available to appellants and other interested persons. Appellants also alleged that appellees have attempted to expel appellants from this church at a meeting held "on and since" April 19, 1946; but say that the excommunication was invalid for various reasons, and they prayed for an inquiry into this matter and a judgment declaring their excision to be wrongful. They also pray that appellees be restrained from "drawing checks, drafts, or money orders, or spending any of the monies or funds of said church, or disposing of any of the same until the members of said church have had an opportunity to discuss their business and affairs and elect officers", and that appellees be thereafter required to deliver church funds and prop-

erty in their hands to such officers as may be elected.

Appellants allege that appellee Johnson is a member of the Church and is also a trustee, as is appellant Lewis Hughes, of a non-profit Texas corporation styled Sixth Street Baptist Church of Port Arthur, Texas. The creation and existence of this corporation is alleged, but we have found nothing in appellants' petition showing any connection between that corporation and the subject matter of this suit, and do not understand why appellants refer to it. We note appellants' allegation that the church building is owned by the members of the unincorporated association.

Appellees' pleading consists of a plea in abatement wherein they allege that this suit was filed on April 19, 1946, and that all of the plaintiffs (appellants here) were expelled from the Church at a meeting of the Church on April 21, 1946, by a vote of 206 to 8. Appellees also moved for dismissal of the suit on this ground and on the additional ground that the suit was moot, apparently for the reason that the Church then had a board of deacons, nine in number, and other officers, to wit, a church secretary and a church clerk. Subject to the plea and motion aforesaid, appellees filed answer (First Amended Original) consisting of an exception, a general denial, and a special plea that appellee Keeling was the duly appointed and acting pastor of the Church; that his office was confirmed to him at a church meeting on April 21, 1946, by a majority of the Church members; and that the Church "is now operated by and through its pastor and its duly appointed Board of Deacons (of whom appellee Johnson is shown to be one) and that no regulations, rules or by-laws of said church have been violated or evaded; and all defendants (appellees here) ask for is an opportunity to conduct the business and religious affairs of said church in a peaceful and harmonious manner."

We have summarized these pleadings to state the essence of the controversy between the parties and also because recitals in the order appealed from show that said order is based upon a hearing of "the application of plaintiffs for temporary injunction, as set out in their pleadings on file, and the plea in abatement interposed by the defendants hereto"; and the pleadings referred to in the order must be the pleadings before us. There is no formal prayer for temporary injunction in appellants' petition; but it may be that the nature of the relief by way of injunction for which appellants do pray requires, and therefore would support, temporary injunctive relief. At any rate, we will so assume, without undertaking to decide the question.

The Statement of Facts shows that only two witnesses testified on the hearing of July 18, 1946, each called by appellees. Elizabeth Stewart testified that she was a member of and was the clerk of, the Sixth Street Baptist Church, and that it was her duty to keep minutes of the meetings of said Church. She read in evidence her minutes of a meeting of said Church held on April 21, 1946, and showed thereby that all of the appellants except three, to wit, Mitchell Johnson, Pearl Brouders and Elizabeth Robinson were excised from the Church at that meeting by a recorded vote of 206 to 8. We are not to be understood as passing upon the legal effect of that meeting; we only mean to state the substance of Elizabeth Stewart's testimony. According to this witness, appellants Lewis Hughes, Monroe Robinson and Nat Arceneaux were present at this meeting and voted against exclusion. Copies of letters appear in these minutes one purportedly from appellant Pearl Brouders addressed to appellee Keeling, and others from appellants Mitchell Johnson and Elizabeth Robinson addressed to the Judge of the trial court, showing that these persons were wrongfully included as parties plaintiff in this suit; but the order appealed from recites a hearing of "Plaintiffs' "application for a temporary injunction and a notice of appeal by "Plaintiffs", and the term "Plaintiffs" includes these three parties. Too, the appeal bond is signed by every person named as a plaintiff in the petition, including these three. Under these circumstances, we must hold that there were before the trial court on the hearing in

that court at least three persons who, if ever members of the church, were not excluded from the church at the only church meeting alleged in appellees' plea in abatement or referred to in the evidence; and therefore Elizabeth Stewart's testimony showing the exclusion of appellants other than these three persons, as well as the proffered testimony of appellants respecting the legality of the exclusion of some of appellants, is immaterial here. Under the same circumstances, appellees' plea in abatement of the suit as a whole was not good.

John M. Wright, the other witness, was the Pastor of the First Baptist Church in Port Arthur and said that he had been a Baptist minister for some 20 years. He testified that every Baptist Church (and thus, the Baptist Church before us) was a sovereign entity which functioned by a majority vote of the members thereof. It is a necessary inference from his testimony as a whole that decisions once made by the Church did not necessarily bind the future actions of the Church, and that while it might be true that procedural rules once adopted ought to be generally followed, these rules did not constitute organic law binding upon this Church. He said the organic law of the Baptist Church was the New Testament; and while he spoke in general terms he obviously referred to the Sixth Street Baptist Church as well as other Baptist Churches. His testimony supports the conclusion that he meant precisely what he said when he testified: "That is right, the Baptist Church can do anything it wants to by majority of its voters."

Appellants advance seven Points of Error for reversal.

Under Points 1 and 2, appellants assign error to the trial court's refusal to hear evidence and thereunder to restrain appellees from "interfering with Plaintiffs and the other members of the church in their efforts to hold an election for officers of the church." The quotation is from Point 1 but adequately presents the subject matter of Point 2.

According to appellants' Bill of Exceptions, appellants offered to prove certain matters which the trial court declined to hear. Whether this action constituted reversible error depends, of course, upon the materiality of the evidence tendered by appellants; and on this basis, we hold that no reversible error has been shown.

It is a necessary inference from appellants' Bill, and from Elizabeth Stewart's testimony, that appellee Keeling is acting as the pastor of the Church; but the Bill fails to show (as does the statement of facts) that Keeling was not, in fact, the pastor of this Church, or that he had no right to enter the church building, or take part in deliberations of the church members in meeting assembled. It does appear from the Bill that appellee Johnson was a church officer (elected prior to or during 1941); the Bill leaves the impression that he was not only a deacon of the unincorporated association, but was also a "director" of the non-profit corporation referred to above. Thus the Bill shows that appellee Johnson has a right to enter the Church building and to participate in Church meetings.

The only showing made in the Bill respecting appellees' interference with appellants wish to have an election of church officers is in the following terms: "That the Plaintiffs were desirous of conducting an election within the Church, and of taking the financial and fiscal affairs of the church into the hands of the proper officers of the church, so as to conduct the same in a churchlike and legal manner, but that all efforts on the part of plaintiffs and those associated with them (who constituted a majority of the membership) were being prevented by the defendant, U. S. Keeling, Jr., assisted by the said Rufus Johnson, because the said Keeling, being the alleged pastor of the Church, mounted the pulpit and refused to permit anyone in the audience to have any voice with respect to the management and control of said Church, save and except himself, or those who were known to favor the said U. S. Keeling, Jr. in any controversy that might arise concerning the management and conduct of the business of the church at variance with the said Keeling."

Since appellee Keeling was acting as pastor, and since appellee Johnson was a

church officer, there was obviously no trespass before the court; and either or both of the appellees had a right to mount the pulpit and attempt to influence the persons present if their audience proved willing to listen to them. According to Elizabeth Stewart, this church contains over 200 members; the Bill says nothing about any force or fraud, nor about any combination except between the two appellees; and we have not been able to perceive how appellee Keeling's expected conduct could have the effect which appellants anticipate unless the persons meeting together, or a very substantial majority of them were willing to follow Keeling at the time. The impression left upon us by the Bill is that appellee Keeling, by force of personality or by persuasive argument, is able to control the course of a church meeting; but the exercise of such personal qualities, without more, would hardly justify the trial court's laying appellee Keeling under an injunction.

█ There is nothing here upon which the trial court could act; for if the church, or a majority of the church, are willing to follow Keeling, or Keeling and Johnson, that is the end of the matter—on such facts as are before us. In a sovereign entity such as the Sixth Street Baptist Church of Port Arthur, Texas, a majority of the members present in meeting (so long as it can be said to be a meeting of the church and not of a faction) ordinarily speak for the church. Bro. Wright said: "That is right, but if the majority see fit to abide by what the preacher says, there is nothing else to be done." And further: "Q. Where the personal interest of the pastor himself is concerned, is it usual and ordinary for the pastor to assume to act and be the moderator in matters of that kind? A. If it is the will of the church." The testimony of this witness respecting the power of the majority in this Church is in strict accord with the reported decisions of this State. In the name and in behalf of religious liberty, the civil courts of this State ordinarily leave to the Church the determination of questions of Church discipline and government; they limit the exercise of their jurisdiction to the determination and protection of property rights. See Brown v. Clark, 102 Tex. 323, 116 S. W. 360, 24 L.R.A.,N.S., 670; First Baptist Church of Paris v. Fort, 93 Tex. 215, 54 S.W. 892, 49 L.R.A. 617; Minton v. Leavell, Tex.Civ.App., 297 S.W. 615; Hopson v. Swansy, Tex.Civ.App., 1 S.W.2d 419; Davis v. Turner, Tex.Civ.App., 148 S.W. 2d 256; Jarrell v. Sproles, 20 Tex.Civ.App. 387, 49 S.W. 904; Nance v. Busby, 91 Tenn. 303, 18 S.W. 874, 15 L.R.A. 801. There being no trespass before us, and, as pointed out below, it not having been shown with any certainty that any property rights were exhibited to the trial court at the hearing in that court, there was, as stated, nothing on which the court could act, nothing justifying injunctive relief, to appellants.

Points 1 and 2 are accordingly overruled.

█ Under Points 3 and 4, appellants assign error to the trial court's refusal to hear evidence and thereunder, to restrain appellees from "drawing drafts, checks or money orders, or spending any of the monies of the church organization, pending an election for officers of the church." The quotation is from Point 3 but includes the subject matter of Point 4.

The witnesses Stewart and Wright did not refer to any of these matters, nor does appellants' Bill of Exceptions. It does not appear from the Statement of Facts nor from the Bill that appellees, or either of them, held any church funds on deposit in bank or otherwise, or that they expected to draw drafts, checks or money orders on Church funds or to spend Church monies. The Bill recites that "the Plaintiffs (appellants here) were desirous of conducting an election within the church, and of taking the financial and fiscal affairs of the church into the hands of the proper officers of the Church", but what these "financial and fiscal affairs" were, in praesenti or in futuro, or whether the same were of such character and importance as justified attention from the trial court, do not appear. The petition refers to a church building, which the members of the unincorporated association were said to own, but the existence of such a building was not prov-

en; nor was it proven nor did the appellants offer to prove that any church property existed.

Points 3 and 4 are therefore overruled.

■ Under Point 5, the appellants assign error to the refusal of the trial court to appoint a moderator and to direct him to hold an election of officers in this Church.

Point 5 is overruled. We are not satisfied that the subject matter of this Point of Error is involved on this appeal. According to the order appealed from, said order was made upon a hearing under appellants' application for temporary injunction and appellees' plea in abatement. The order also recites that at the conclusion of the hearing the trial court made the following ruling and the appellants took their exception to that ruling, namely: "All restraining orders, temporary injunctions, and orders now in effect relating to and calling for an election are canceled and annulled. The temporary injunction is denied." We know nothing about any orders of any kind which may have been made before the hearing of June 18, 1946. None are before us, nor any application therefor. Appellees' motion to dismiss refers to some restraining orders made before June 18, 1946, but that motion was not presented. The only part of the ruling which is covered by the record is the denial of a temporary injunction; but from the very nature of the hearing we must assume that orders made prior to June 18, 1946, did not finally dispose of appellants' prayer for an election, that being the essence of the suit. The record is confusing, but we infer that appellants' prayer for an election is still pending.

■ Further, there is nothing to show that if and when the majority of the church wants an election of officers, this election will be denied; and still further, we have not found any authority—on the facts before us, no property right being exhibited on the hearing—for the trial court's assuming control of the affairs of this church and ordering an election therein, or controlling the conduct of such an election.

■ Under Point 6, appellants assign error to the trial court's failure to determine appellee's plea in abatement, and under Point 7, to the trial court's refusal to hear appellants' evidence respecting the subject matter of this plea.

Points 6 and 7 are overruled. If the trial court failed to decide the plea in abatement, that is matter for complaint on this appeal by appellees, if by any one, and appellees say nothing. As we have pointed out above, the trial court would not have been justified in dismissing the suit on the proof before him relevant to appellees' plea.

This disposes of appellants' Points of Error. No reversible error appearing, the judgment of the trial court is affirmed.