DAVID et al. v. CARTER et al.

No. 2729.

Court of Civil Appeals of Texas. Eastland.

July 25, 1949.

Rehearing Denied Sept. 9, 1949.

Dan Moody, Austin, Mac Umstattd, Austin, Willis W. Ellison, Gonzales, John Romberg, Gonzales, for appellant.

N. A. Quintanilla, San Antonio, Solomon Casseb, Jr., San Antonio, Turner & Seaberry, Eastland, for amici curiae.

Stahl & Sohn, San Antonio, Tom Cheatham, Cuero, for appellee.

COLLINGS, Justice.

This suit is an equitable action for a mandatory injunction. It is a class action brought by approximately seventy-six alleged members of the First Baptist Church of Cuero, Texas, for themselves and others of the same class, against Ben M. David, the Pastor of said church, and numerous other named members of said church individually and as representatives of a class of other members.

Most of the named plaintiffs had been purportedly expelled from the church and four of such plaintiffs had held official positions in the church before their expulsion. The plaintiffs, appellees herein, prayed for an injunction restoring them to membership and to various offices in the church and restraining said Ben M. David and all those acting in concert with him from interfering with said plaintiffs in the exercise of their rights of church membership and worship and to hold such offices. The defendants, appellants herein, filed several special exceptions and pleas in abatement which were overruled by the trial court. The trial was had before the court without the aid of a jury and resulted in an injunction decree against said appellants which decree awarded appellees substantially what they prayed for.

The facts of the case as reflected by the testimony are substantially as follows:

Appellant, Ben M. David, is a married man with family, a Baptist Minister, 40 years of age and became pastor of the First Baptist Church of Cuero, Texas, in November, 1941. In the early part of 1946, rumors reflecting upon his moral character began to be circulated around the town of Cuero. These rumors involved Ben M. David with a young woman. It is in evidence that on two occasions in the latter part of 1945 Bill Milligan who lived in a pasture next to a tract of land which Ben M. David had leased, went into the pasture and saw two cars parked close together, but in each instance, David and the young woman were sitting together in one of the cars. David was on other occasions seen riding with or picking up the woman in question and was also observed with her again in the pasture. It is in evidence that there was a report about town that if one went down to a certain place any Tuesday or Thursday morning they could have evidence of the misconduct of David and the young woman. R. J. Garraway and Harley Rice, deacons in the First Baptist Church, and Marion C. Weber, a member of the church, went to the pasture on the Victoria Highway on a certain Tuesday morning to ascertain if there was any truth to these reports, and on such morning saw appellant Ben M. David drive into the pasture and thereafter saw the young woman also come into the pasture, and saw both of them leave about two and one-half hours later through different gates.

About the first part of 1946, Dr. Fred W. Buchel, Chairman of the Board of Deacons and a Trustee of the First Baptist Church, Reverend Stokes, a retired Minister, and member of such church, and Alvin Wyatt, a deacon of the church, called on Ben M. David with respect to these rumors and discussed with him the fact that he had been meeting the lady in question on the Victoria Highway. At this conference David explained the meetings on the ground that the lady was having trouble over financial matters with some of her in-laws and that she had come to him to advise with him about the matter. At the conclusion of the conference, these men advised David to cease meeting the young

woman and to remain away from the office where she worked. According to the evidence, David at first declined to do this and then agreed and requested that his wife be not advised about the matter. At the conclusion of the meeting, David told the committee, "If anybody mentions it again I will mash his mouth in."

When Garraway, Rice and Weber had returned to town after seeing David and the young woman go into the pasture and remain about two and one-half hours, Garraway and Weber informed Dr. Buchel of what they had seen. Dr. Buchel contacted David and requested him to come to his office. David admitted that he had been in the pasture but contended that he was helping a Negro build a fence. While the matter was being discussed by them, David looked out of the window and saw Harley Rice on the street and left Dr. Buchel's office and went after Rice. When David reached Rice they got into David's car and drove out on the Victoria Highway. David stopped his car and told Rice that it was now a personal matter between them and not a church matter and further said, "The best thing for us to do, I will open the door and get out and see which one is the best man." David got out of the car but Rice refused and pleaded with David not to attack him. David testified that if Rice had gotten out of the car he would have whipped him. David then drove Rice back to town and they went to Dr. Buchel's office where David told Dr. Buchel, "I just talked with Harley Rice and went over this matter with him and I think we have a thorough understanding about it."

After David left the office of Dr. Buchel on this occasion, he contacted Marion C. Weber to ascertain why Weber had told Dr. Buchel about what he observed out in the pasture and warned Weber not to make any reflection on his moral character, especially in view of the fact that he considered Weber to be a draft dodger.

Weber testified that when he suggested that a deacons' meeting be held with reference to the situation, David replied, "I will have you understand there will be no deacons' meeting," and, "What you fellows are fixing to start in Cuero is one of the bloodiest battles that was ever fought— I, David, am not afraid—and I've got a son that is not afraid"; and when Weber suggested that they should meet and pray about it instead of shooting and fighting over it, David replied, "Bub, don't you know they accuse you of running with a woman?" David also stated to Weber that he would be there when Weber was gone.

Dr. Buchel testified that he told David, "Dr. David, as a friend, when all the school children and all the children in the Sunday School know this talk about you, I think the best thing for you to do right now is to be looking for a place and move out of the situation for the sake of the church, for your wife and your family."

It is in evidence that David continued to intimidate Rice and on one occasion Rice called the Chief of Police to escort him home. Also, Lawrence Coppedge, an appellant herein, told Rice that he would beat both his eyes into one.

On Sunday, August 11, 1946, Ben M. David preached a sermon, in which he used the phraseology "Wynken, Blynken & Nod," for the purpose of replying to the reports being made against him. He stated that he had an operation to perform; that he was of a certain height and weight and that no one had ever whipped a David and that he (David) could shoot from the hip and that no David had ever died with his boots on; and that he (David) would give $100 to anyone that could prove that he had been whipped; that David thereupon handed a $100 dollar bill to Alvin Wyatt to be presented by Wyatt to whoever wanted to claim it. Wyatt returned the $100 bill to David at the conclusion of the sermon.

On Wednesday night, September 10, 1947, at a regular business meeting of the church, while David was presiding as a moderator, Dr. Buchel made a motion asking for the resignation of Ben M. David as pastor. David refused to put the question and requested that someone make a motion to adjourn. The motion to adjourn was made but was defeated. Whereupon, Dr. Buchel again made his motion

asking for the resignation of David as pastor which motion was seconded and although David still refused to put the question, it was, upon the insistence of Dr. Buchel, voted upon by the members of the church present and carried 26 to 13. After the motion had carried, Dr. Buchel stated that since there were so few present and since the entire church should have a chance to vote on the serious matter under consideration, that he desired to make a second motion which motion was seconded and carried and provided for a special called meeting of the church for September 17, 1947 to vote on the matter again, and provided that the church secretary give each member of the church written notice of such special meeting. In accordance with this motion, a notice was sent to each member of the church advising them of the purpose of the meeting and urging them to be present and vote. Accompanying the notices were blank ballots which they were urged to use and mail back to the church secretary if they were unable to attend personally.

At the meeting on the evening of September 10th, when Dr. Buchel was making his motion, Ben M. David got off the platform, pulled off his glasses and started down the aisle in the direction of Dr. Buchel in an angry manner. One of the members present caught David and held him until the vote was taken. At the conclusion of the meeting, another appellant, Lawrence Coppedge, also started towards Dr. Buchel in a very angry manner and said: "G—D—, I am going to whip Dr. Buchel" and also said, "Let me get at that G—D—S—B—." Someone also took hold of Lawrence Coppedge and stopped him. Later some of his children came and took him away.

On Friday, September 12, 1947, Willis Barfield, an appellant herein, came to the home of Mrs. Ellzey and told her that if she signed the ballots that were voted on September 10th she would be sorry. On Saturday, September 13, 1947, Ben M. David, his wife and son Bill, went to the place of business of Alvin Wyatt. Bill David told Wyatt that he had treated his daddy dirty at the church meeting on Sep-

tember 10th and that he had a yellow streak in him. According to Wyatt, Bill David appeared to be very angry. On this same occassion Ben M. David told Wyatt that it was dirty and low down for him to have voted on Dr. Buchel's motions. Appellant Barfield also called on Dr. Buchel and advised him that he (Barfield) and his group would not recognize any action taken on September 17, 1947, but would run the church like they wanted to.

On a Sunday morning in September, 1947, Annie Hennessey, who was not a member of the First Baptist Church, saw Ben M. David going up the church steps with a rifle and after she had made known what she had seen, was advised by relatives of some of the appellants that it was none of her business and that she would get into trouble if she did not keep out of it. Prior to the Sunday morning service on September 14, 1947, Bill David stopped Freeman Schultz outside the church, shook a finger in Schultz's face and criticized him for voting in favor of Dr. Buchel's motions on Wednesday, September 10th, and said, "Freeman, I would not be in your shoes for ten thousand dollars—it is a risky business to do things that would be wrong toward the pastor."

After the above incidents had transpired, Alvin Wyatt and Freeman Schultz became fearful of what might happen if the meeting scheduled for September 17th was permitted to take place. At about five o'clock in the afternoon of Sunday, September 14, 1947, they got together and discussed the matter and decided to go and talk to Dr. Buchel. After advising with him it was agreed that Wyatt and Schultz would go to the church that night and suggest that the meeting be called off. At the conclusion of the meeting with Dr. Buchel they went to the home of Willis Barfield, an appellant, and then went to the church where they talked to Ben M. David and some of the deacons about calling off the meeting of September 17th.

David testified that when Wyatt and Schultz arrived and discussed the matter with him that he (David) said, "Now, let's settle this and settle it once and for

all—when you go in the church and have conferences, let's vote that we cannot have any more conferences unless I and the deacons get together on it and call the conference." David then went into the church and announced that church was called in conference although this was not a time at which church conferences were regularly held.

Freeman Schultz then made a motion to call off the meeting scheduled for September 17th and at the suggestion of David, also made a motion that all business meetings of the church be abolished and that no future business meetings be had unless the pastor and deacons so recommended. No prior notice had been given to the membership that there would be a special called meeting at that time.

The record discloses that all business matters of the church subsequent to September 14, 1947, were upon the call and recommendation of the pastor and deacons and that no prior notices were ever given of such meetings. The members present at church on such occasions simply resolved themselves into a business meeting at the suggestion of the pastor and deacons. It was at one of such subsequent meetings that the resolution was made by which appellants were expelled from the church. The resolution purported to authorize the clerk of the church to compile the names of all resident members who actively identified themselves with any other church or Sunday School, by attendance or support, and to drop the names of such members from the church roll. The resolution provided that such members were of that date (October 12, 1947) dismissed, and that all those who qualified in the future, thereby immediately terminated their membership in the church and the clerk was authorized to strike their names from the church roll.

■ Appellants insist in Point No. 1 that the court erred in overruling their plea in abatement and exception contending that the First Baptist Church of Cuero, a corporation, was a necessary party to the litigation and that appellees' first amended petition was insufficient because it failed to join such corporation as a party defendant.

Articles 1396-1397, R.C.S. of Texas provide in substance that any religious society may by consent of a majority of its members become a body corporate, elect directors or trustees and perform such other things as are directed in the case of other corporations and that the secular affairs of a religious corporation shall be under the control of a Board of Trustees elected by the members thereof, and that the title to all property of the corporation shall vest in such trustees.

The relief prayed for in appellees' petition was that the removal of certain plaintiffs from their respective church offices be held void and ineffective; that the expulsion of approximately seventy-six (76) of the plaintiffs from the church be held void; that the election of certain defendants to certain church offices be held void and that injunctive relief be granted against the defendants as members of the First Baptist Church of Cuero enjoining them from interfering with appellees' rights as members and officers of such church and particularly their right to hold an orderly election within the church membership to determine whether or not appellant David should be expelled as pastor of the church.

The evidence was to the effect that Baptist churches generally and this church in particular, are by policy, practice and custom, each free, independent and supreme in the management, control and determination of its affairs whether secular, spiritual, or otherwise; that a Baptist Church is a democratic body in which each member has the same right as any other member to participate in the government of the church in an orderly and decorous manner. There is no appeal from the decision or determination by a Baptist church on any question which comes before it to any higher ecclesiastical body. The function of the corporation, the First Baptist Church of Cuero, Texas, and of its trustees was to hold legal title to the physical property of the church. The equitable title to this property was in the church and not in the corporation. The trustees of the church had no power to convey or encumber the

property of the church in any way without first being granted authority by the membership of the church. The church corporation has no power to expel members from the church or to receive them into the church. It has no power to elect deacons or to deprive a deacon or other officer of the church of the official position he occupies. The corporation has no power to employ or to discharge the pastor of a church. All of these matters are within the power and under the control of the members of the church, acting together at a regular or properly called business meeting, and are in no way under the control of the corporation. If the First Baptist Church of Cuero, Texas, a corporation, was a party to this suit, there is no conduct complained of by appellees which the corporation was in any way a part of or connected with. There is no relief prayed for by appellees which the church corporation would have the power to grant even if it desired to do so. The matters complained of and the relief sought are not within the scope of the powers of the corporation. The First Baptist Church of Cuero, Texas, a corporation, was therefore not a necessary party defendant to the litigation. Walker Memorial Baptist Church v. Saunders, 285 N.Y. 462, 35 N. E.2d 42; Hardin v. Baptist Church, 51 Mich. 137, 16 N.W. 311, 47 Am.St.Rep. 555; Blount v. Sixteenth St. Baptist Church, 206 Ala. 423, 90 So. 602; People ex rel. Dilcher v. German United Evangelical Church, 53 N.Y. 103; Masbruch v. Von Oehsen, 163 Wis. 208, 157 N.W. 775; Hughes v. Keeling, Tex.Civ.App., 198 S.W.2d 779, 783; Fort v. First Baptist Church, Tex. Civ.App., 55 S.W. 402.

Appellants contend in Point No. 2 that the trial court erred in rendering judgment binding not only on named defendants but also on all other members of the First Baptist Church of Cuero, Texas, acting together and in concert with such named defendants. This suit was filed as a class action and no complaint was made thereto by appellants. The trial court provided and found in its judgment: "* * * that each such member of said church acting for and in concert with Defendants stands in the same relation to Plaintiffs as do those who are named Defendants herein, and that the named Defendants herein, in their individual capacity and in their capacity as representatives of the whole class of persons acting in the way and manner of Defendants, or for and in concert with Defendants, are in truth and in fact a truly representative class of persons representing all such members, and that the named Defendants are similarly situated as relates to Plaintiffs, as are all other of said members of this class as specified."

The above finding by the court as to the relationship between the parties plaintiff and defendant in this cause is supported by the evidence. Under such circumstances where suit is filed as a class action, judgment may be entered against such unnamed parties even though they have not been served with citation, and such judgment is binding against such unnamed parties. Southern Ornamental Iron Works v. Morrow, Tex.Civ.App., 101 S.W.2d 336; Richardson v. Kelly, 144 Tex. 497, 191 S.W.2d 857; Howell v. Knox, Tex.Civ.App., 211 S.W.2d 324; Gray v. Moore, Tex.Civ.App., 172 S.W.2d 746; City of Wichita Falls v. Cooper, Tex.Civ.App., 170 S.W.2d 777.

In Point No. 3 appellants contend that the trial court erred in restoring all appellees to membership in the First Baptist Church in Cuero and in reinstating certain appellees as deacons and trustees in such church and in prohibiting the pastor, Ben M. David, from interfering with their church affairs, because such restraining provisions do not concern such vested property rights as are necessary to support an injunction. The trial court found in effect that the action of appellants and those acting with them in expelling appellees from membership in the church and in expelling certain other appellees as deacons and trustees in such church was not the act of the church itself but was the act of appellants; that such action on the part of appellants was not in accord with the accepted polity, custom, usage and practice of the church. Membership is a voluntary matter on the part of one who joins a church and by becoming a member his rights therein are governed by the custom,

practice and regulations of the church body of which he becomes a member. This right to membership in the church under the rules and regulations of the church is a valuable right and although the courts will not disturb any action by the church as long as it is in accordance with the rules by which it is governed, they will grant relief from disciplinary action when the facts show a radical departure from the accepted customs and rules of the organization. Schumann v. Dally, Tex.Civ.App., 29 S.W. 2d 422; Crenshaw v. Muse, Tex.Civ.App., 118 S.W.2d 631; Clark v. Brown, Tex.Civ. App., 108 S.W. 421; Linke v. Church of Jesus Christ of Latter Day Saints, 71 Cal. App.2d 667, 163 P.2d 44; Bouldin v. Alexander, 15 Wall. 131, 21 L.Ed. 69.

In Point No. 4 appellants assign as error the action of the court in restraining them from interfering with and preventing business meetings of the church by threats, violence or bloodshed, because no evidence that such conduct was seriously threatened or imminent occurs in the record. In our opinion, appellants' contention concerning the state of the record on the question is untenable. The record as hereinabove summarized is replete with instances where threats of violence were made by Ben M. David and other appellants. The occasion of these threats was always the same. In each and every instance where violence was indicated or threatened, the person against whom the threat was being made had either been a party to the investigation of the reports which the evidence shows to have been current against Ben M. David, or was endeavoring to cause an investigation of such reports to be made by the church with the view to dismissing David as pastor. Appellees, as members of the First Baptist Church of Cuero, had the right to investigate the report against David. It could hardly be questioned that the members of a church have the right to require a high standard of morality on the part of a pastor and to inquire into the truth or correctness of any reports against him. They likewise have the right to have a meeting for the purpose of determining whether a pastor should be dismissed or not. This

would be true even if there were no reports of a disgraceful nature being circulated. It is evident that these were the very things to which appellant Ben M. David and other appellants objected so seriously. Their displeasure was evidenced, on every occasion that the question was raised in or out of the church, by threats and vituperation. The evidence indicates that to be the reason why the meeting scheduled for September 17th to determine whether David should be dismissed as pastor was called off. According to the testimony of Wyatt and Schultz, the meeting was called off because they were afraid there would be violence and bloodshed. The cause of their fear was the threatening words and actions of appellants. The trial court heard the testimony and evidently believed this to be the case. We feel that his conclusion in this respect was not in error, and that the injunctive relief was properly granted. 24 Tex.Jur. p. 146; Lytle v. Galveston H. & S. A. R. Co., 100 Tex. 292, 99 S.W. 396, 398, 10 L.R.A.,N.S., 437.

In Point No. 5 appellants contend that the trial court erred in holding null and void and of no force or effect the several actions taken at special called conferences of the First Baptist Church of Cuero without previous notice of the time, place and purpose of such meetings, because there was no testimony to establish that such actions taken and the manner of holding such meetings violated the customs and usages of such church. Several witnesses testified concerning the polity, custom, usage and practice of Baptist Churches generally and of the First Baptist Church of Cuero, in particular. Most of the witnesses who testified stated that the polity, custom and practice of Baptist churches and of the First Baptist Church of Cuero, Texas, was to have a regular business meeting once each month; that said regular business meeting time was at the evening prayer service on the first Wednesday following the first Sunday of each calendar month. That special or called business conferences could be convened only upon prior notice thereof to the membership of the church, except that it was customary to receive members into the church and elect messen-

gers to associational meetings at any regular service of the church. Appellants contend and there was some testimony in support of their contention, that it was the polity and established custom of the First Baptist Church of Cuero to transact any kind of business at any Sunday or Wednesday church service without any prior notice. The answer to this contention is that the evidence was conflicting on the point and that the trial court found to the contrary. Since the manner of calling and holding the special business meetings in question without previous notice of time, place and purpose were not in accordance with the polity, custom and usage of the First Baptist Church in Cuero, the actions taken at such meetings here complained of were null and void and of no force and effect. 54 C.J., Sec. 36, p. 21; Horbal v. St. John's Greek Catholic Church of Detroit, 260 Mich. 331, 244 N.W. 493; Randolph v. Mt. Zion Baptist Church of Newark, 139 N.J.Eq. 605, 53 A.2d 206; Woods v. Humber, Tex.Civ.App., 282 S.W. 834; Crenshaw v. Muse, supra; Longmeyer v. Payne, Mo.App., 205 S.W.2d 263; Trett v. Lambeth, Mo.App., 195 S.W.2d 524; Clark v. Brown, supra; Schumann v. Dally, supra.

In Points 6 and 7, appellants contend in effect that appellees have failed to exercise reasonable self help within the church before resorting to injunctive relief, but instead have separated themselves into a distinct church, thereby abandoning their rights to membership in the First Baptist Church of Cuero, and to the injunctive relief for which they pray. We cannot agree with appellants in this contention. The evidence justifies the conclusion that there might have been serious difficulty if not bloodshed, if appellees had persisted in their attempt to have an orderly election by the membership of the church on the question of dismissing Ben M. David as their pastor. Appellees had the right to have such election held in an orderly manner. There was no remedy by appeal to any other ecclesiastical body or tribunal by which relief could be obtained from this intolerable situation, or from the unwar-

ranted action by which appellees were expelled from membership in the church and from various offices held by some of them therein. Under such circumstances it was proper for appellees to invoke the equity powers of the court. Sunset Grand Lodge of Masons of Texas v. Bell, Tex. Civ.App., 25 S.W.2d 160, 161; Willis v. Davis, Tex.Civ.App., 233 S.W. 1035; Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101.

The trial court found that appellees did not withdraw from membership in the First Baptist Church of Cuero and organize another church, but that they retained membership in such church and that the occasion of their assembling at a place other than the church building for worship was caused by the wrongful acts on the part of appellants which rendered it impossible for them to worship together in harmony. In our opinion the evidence fully supports this finding.

The judgment of the trial court is affirmed.