**Ex parte Reverend Erskine McCLAIN.**

**No. 09–88–164–CV.**

Court of Appeals of Texas,
Beaumont.

Nov. 17, 1988.

Michael M. Lee, Port Arthur, for appellant.

James A. DeLee, Port Arthur, for appellee.

## OPINION

DIES, Chief Justice.

This is an original habeas corpus proceeding brought by Reverend Erskine McClain, relator. The petition alleges relator is being illegally confined in the Jefferson County jail by virtue of a commitment order finding him in contempt for violation of a permanent injunction decree. Relator has been admitted to bail by this court pending a ruling on relator's petition.

We grant the petition for writ of habeas corpus and order relator discharged from custody.

In January of 1988, four members of the St. John Baptist Church of Port Arthur, Texas, an unincorporated religious association, brought suit against the relator seeking a temporary restraining order and, ultimately, a permanent injunction to enforce relator's ouster as pastor of the church. Permanent injunction was granted in March, enjoining relator from acting as pastor of the church absent further determination of the matter pursuant to church rules, from interfering with the normal workings of the church or its congregation, from going onto or near church property except in a membership capacity, from withdrawing funds from church accounts or spending funds belonging to the church or its congregation, and from engaging in acts "calculated to embarrass, harrass [sic], or injure the plaintiffs or any members of the congregation." Relator was also ordered by mandatory injunction to vacate the residence furnished him by the church, to return all keys to the church and residence, and to account for and return all church funds collected under his supervision, within thirty days.

More than two months after the injunction issued, the trial court held relator in contempt and committed him to jail for forty-nine days.

■ The controlling issue presented for decision by this court is whether the trial court's order fails to state definitely the reason the court held relator in contempt, and if so, whether this indefiniteness renders the order void.

The trial court's order reads in part:

"After examining all the pleadings and hearing the evidence and arguments of counsel, the Court finds and now holds that this Court has jurisdiction of this proceeding; that the Motion for Contempt filed herein is in all respects proper and sufficient; that ERSKINE McCLAIN was afforded due and proper notice of these proceedings and was properly served with the Decree Grant-

ing Permanent Injunction of March 7, 1988, by which ERSKINE McCLAIN was ordered to vacate the residence furnished him by St. John Baptist Church and to return all keys to said church and residence in his possession to the trustees of the church within thirty (30) days of entry of said Order.

"IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED by the Court that Defendant, ERSKINE McCLAIN, is in contempt of this Court for violation of the Decree Granting Permanent injunction of March 7, 1988."

Though the contempt order lists two of the many provisions contained in the injunction, it fails to state that relator failed to comply with the provisions listed or any other provision contained in the decree. The order is therefore indefinite.

Texas courts have repeatedly held that a contempt order must clearly state in what respect the court's prior order has been violated. *See e.g. Ex parte Bullington*, 66 Tex.Cr.R. 256, 145 S.W. 1190 (1912); *Ex parte Proctor*, 398 S.W.2d 917 (Tex.1966). However, the decisions in which the supreme court and court of criminal appeals have narrowly addressed the issue have regarded instances where relators were held under "civil contempt" orders, a remedial or coercive measure. In "civil contempt" cases the rule that the contemner must be told in the judgment the exact nature of his violation apparently arises from a concern that he know what steps

are required to purge himself so as to be released from jail. For instance, in *Proctor*, the supreme court seemed to hinge its decision on the coercive nature of "civil" contempt:

"[T]he relator Proctor is entitled to be released, and it is so ordered.

"This holding does not disturb the recognized power of a court to confine a party for contempt until he obeys the order for which he has been held in contempt for disobeying. However, where this remedy is followed, the order should clearly state in what respect the court's order has been violated and that the party is committed to jail until the court's order is complied with to the extent required by the court."

*Id.* at 918. *Citations omitted.*

Relator in this case is held under a contempt order which is punitive in nature, as evidenced by the set term of confinement and the lack of a purging provision. This is "criminal contempt." *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex.1976). Relator can do nothing to purge himself.

We find no supreme court or court of criminal appeals case which directly applies to "criminal contempt" cases the rule that contempt orders must clearly state in what respect the court's prior order has been violated.[1] However, in *Ex parte Davis*, 171 Tex.Cr.R. 629, 353 S.W.2d 29, 33 (1962), a case in which a reporter was ordered taken into custody until certain fines were paid, the court of criminal appeals noted

1. In *Ex parte Bullington, supra,* the court of criminal appeals ordered an alleged criminal contemner discharged because the court found his conduct did not constitute contempt of court. The court continued, "In addition to this, the order is rather vague and indefinite, and does not state what orders he refused to obey, and is therefore insufficient." The court did not make clear whether this insufficiency alone would require discharge. In *Ex parte Dugas,* 587 S.W.2d 735 (Tex.Crim.App.1979), the court of criminal appeals set aside an indefinite criminal contempt order on the grounds that the show cause order and the contempt order were at variance as to the order violated and the acts committed. In *Ex parte Davis,* 450 S.W.2d 97 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ), an appeals court found insufficient a contempt order which apparently provided both punitive and coercive prison terms; i.e., the

court committed the contemner to jail for three days and until he purged himself by paying attorneys fees and court costs. *Id.* The contempt order's lack of specificity made it impossible to determine which of two possible prior orders relator had violated. For a violation of one of the orders, payment of child support, civil contempt would have been appropriate. For violation of the other, an order to refrain from being intoxicated during visits to his children, criminal contempt was appropriate. The court was unable to tell which order had been violated and the evidence did not support violation of the child support order. The court quoted *Bullington, supra,* and *Proctor, supra,* a case in which civil and criminal type sanctions were applied, for the proposition that a contempt order must clearly state in what respect the court's prior order was violated.

the rule that recitals in judgments for contempt are presumed to be true and the burden is upon relator to overcome the presumption. The court wrote: "In order for such rule to be equitable and operative, the judgment must of necessity be so definite and specific that one held in contempt might feasibly overcome such presumption by proof." *Id.* In *Ex parte Hardy*, 531 S.W.2d 895 (Tex.Civ.App.—Dallas 1975, no writ), the Dallas court of civil appeals applied the rule and the *Davis* court's reasoning to a "criminal contempt" case. There, the motion for contempt alleged four violations of an oral order, but the contempt order recited no finding of any particular violation. The court wrote:

> "In these circumstances we must hold that the order in question does not meet the essential requirements of a judgment for contempt. Such a judgment should clearly state in what respect the court's previous order has been violated. It must contain specific findings so that the contemner will be fully apprised of his alleged act of misconduct so that he may overcome by proof, if any is available, the presumption of validity of the order. The present order fails to meet this test."

*Id.* at 896. *Citations omitted.* The relator was discharged from custody in that case.

We believe contempt orders must be clear in both "civil contempt" and "criminal contempt" cases, to afford the contemner the opportunity to purge and absolve himself, respectively. Because the trial courts order in this case was vague and indefinite, relator must be discharged. Relator's first point of error is sustained.

■ Relator next contends the contempt order is void because the church failed to plead a protectable civil or property right which would give the court jurisdiction to intercede into church affairs.

While the first amendment of the United States Constitution prohibits civil courts from exercising jurisdiction over purely ecclesiastical matters involved in church-related disputes, the courts do have jurisdiction as to civil, contract, and property rights even when they are involved in, or arise from, a church controversy. *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Waters v. Hargest*, 593 S.W.2d 364, 365 (Tex.Civ.App.—Texarkana 1979, no writ); *Lide v. Miller*, 573 S.W.2d 614, 615 (Tex. Civ.App.—Texarkana 1978, no writ).

Relator cites *Hughes v. Keeling*, 198 S.W.2d 779 (Tex.Civ.App.—Beaumont 1946, writ ref'd n.r.e.), in which this court upheld the trial court's refusal to issue an injunction forcing the pastor of a church to allow election of a new pastor and church officers. Appellants there alleged the pastor had prevented the election by dominating church members. *Id.* at 780. Our court stated in *Hughes:*

> "There is nothing here upon which the trial court could act; for if the church or a majority of the church, are willing to follow [the pastor], that is the end of the matter—on such facts as are before us. In a sovereign entity such as [this church], a majority of the members present in a meeting ... ordinarily speak for the church.... There being no trespass, there was ... nothing on which the court could act, nothing justifying injunctive relief."

The facts in this case, where the pastor has refused to follow the vote of a majority of the church, are more akin to those in *Schumann v. Dally*, 29 S.W.2d 422 (Tex. Civ.App.—Amarillo 1930, no writ). In *Schumann*, the appeals court affirmed an injunction forbidding members of a church from interfering with religious services and business activities after a small minority of members held a meeting and attempted to elect themselves elders and deacons of the church. *Id.* at 425. As in this case, appellant argued appellee's petition alleged no violation of any "property or contract right, but presented only ecclesiastical matters over which the civil courts have no jurisdiction." *Id.* The court apparently disposed of this point summarily by stating, "[T]he allegations of the petition must be considered as true and in our opinion stated sufficient facts to give the court jurisdiction." *Id.*

Accepting the allegations in the pleadings here as true, jurisdiction is established by the averment in plaintiff's original petition that an election was held which resulted in relator's discharge, that he has refused to accept the termination, that he has since interfered with church services and will continue to do so, that he is causing or will cause irreparable injury, harm, damage or loss for which the plaintiffs, church, and congregation have no adequate remedy at law, and that it is anticipated relator will dissipate funds and property owned by the church, unless he is restrained from doing so.

Relator's second point of error is overruled.

■ Relator also argues that the contempt order is void because plaintiffs had no standing to bring the action since they had no justiciable interest and were not authorized by the majority of church members to bring suit on their behalf. However, litigants who did not object in the trial court cannot be heard to say, even on direct appeal, that the cause should be dismissed because the party who brought them into court had no justiciable interest therein. *Sabine River Auth. of Tex. v. Willis,* 369 S.W.2d 348 (Tex.1963). Certainly such issue may not be raised for the first time by collateral attack upon the trial court's granting of permanent injunction. *See Austin Neighborhoods Coun. v. Bd. of Adjust.,* 644 S.W.2d 560, 565 n. 17 (Tex. App.—Austin 1982, writ ref'd n.r.e.). Appellant's third point of error is overruled.

■ By his fourth and fifth points of error, relator asserts the contempt order is void because (1) the voting list made by the court, the results upon which the order underlying the contempt judgment is based, established a church in violation of the first amendment of the United States Constitution, and (2) the church vote underlying the decree granting permanent injunction was improper. These points will be discussed together because they involve the same underlying complaint.

■ The first amendment to the United States Constitution requires civil courts to leave the resolution of issues of religious doctrine or polity to the highest authority of a church organization. *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). Generally, the local congregation of a congregational church is independent and is its own highest authority. *Presbytery of the Covenant v. First Presbyterian Church of Paris, Inc.,* 552 S.W.2d 865 (Tex.Civ.App.—Texarkana 1977, no writ). The vote of a majority of the members of a Baptist church is generally binding in any matter touching the church government or affairs. *Crenshaw v. Muse,* 118 S.W.2d 631, 633 (Tex.Civ.App.—Austin 1938, no writ). However, rules and regulations, including election procedures, "made by church functionaries or by long usage will be enforced by civil courts if not in conflict with some civil law bearing upon the subject of such rules and regulations." *Schumann,* 29 S.W.2d at 426; *see also David v. Carter,* 222 S.W.2d 900, 907 (Tex.Civ.App. —Eastland 1949, writ ref'd n.r.e.).

Relator contends the trial court usurped an exclusive function of the church when it declared which members of the church were eligible to vote. Much controversy surrounded eligibility to vote in the original election resulting in relator's alleged ouster as pastor. On February 5, 1988, the trial court entered an order calling a meeting of the church congregation so that a second election for pastor could be held. The trial judge further ordered two members of the church to assist him in determining which members of the church were eligible to vote in the election. At the hearing on the motion for contempt, the trial judge said:

"[T]he judge of this Court personally considers the Bible to be the highest authority in existence ... And that Bible ... very clearly teaches ... that there should be no division among Christians. [But] we have a division in the church.... [W]hat this Court has diligently tried to do is honor your procedure in trying to arrive at a conclusion to this problem. It was my understanding, and I don't think it was ever disputed, that the majority of this congregation who were in good financial standing with the congregation would have the right to

vote in any church matters. Yes, we had some dispute as to who were those members.... Therefore, this Court felt that it had to make a determination, based upon your policies, as to who should vote."

Taking as a whole those portions of the record as were submitted on appeal, it is apparent that in determining the voter list, the trial court sought to act in accord with church rules and regulations as dictated by long established custom and usage, *Schumann*, 29 S.W.2d at 426, and did not usurp church authority. Relator's fourth and fifth points of error are overruled.

Relator is ordered discharged.